UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS MARTINEZ VERDE,

      Plaintiff,

v.                                Case No: 8:20-cv-317-CEH-JSS

PASCO COUNTY SHERIFF,
CHRISTOPHER NOCCO, BRAD
CLARK, CHRISTOPHER
STARNES, ADAM TELLIER,
RUSSELL MEISSNER, STEPHEN
MCINNES and BERNIE MCCABE,

      Defendants.
_____/

## **O R D E R**

This cause comes before the Court upon Defendant Bernie McCabe's Motion to Dismiss Plaintiff's Amended Complaint[1], Doc. 14, Motion to Dismiss Amended Complaint by Defendants Sheriff, Nocco, Clark, Tellier, Meissner, and McInnes, Doc. 16, and the Motion to Dismiss the Amended Complaint of Christopher Starnes, Doc. 20. Luis Martinez Verde ("Plaintiff") has responded in opposition. Docs. 41, 42, 43. The Court, having considered the parties' submissions and being fully advised in the premises, will grant the motions to dismiss and dismiss Plaintiff's Amended Complaint.

---

[1] The Court notes that Bernie McCabe died on January 1, 2021. No suggestion of death has been filed by plaintiff or any party. *See* Rule 25 (a), Fed. R. Civ. P.

## I.   BACKGROUND[2]

In December of 2015, Pasco County Sheriff Christopher Nocco ("Nocco"), Pasco County law enforcement officer Christopher Starnes ("Starnes"), and Pasco County law enforcement officer Brad Clark ("Clark") directed the initiation of an investigation into the trafficking of methamphetamine and cocaine in Pasco County, Florida. Doc. 6 ¶¶18–20, 26. During this investigation, Nocco, Clark, Starnes, Pasco County law enforcement officer Adam Tellier ("Tellier"), Pasco County law enforcement officer Russell Meissner ("Meissner"), and Pasco County law enforcement officer Stephen McInnes ("McInnes") utilized confidential informants, surveillance, data collection from mobile tracking devices, and other methods to identify individuals who were responsible for distributing methamphetamine and cocaine within Pasco County. *Id.* at ¶¶21–23, 27.

During the investigation, Plaintiff was implicated as being involved with the trafficking of methamphetamine and cocaine. *See id.* at ¶31. After Plaintiff was implicated, Nocco, Starnes, and Clark used Plaintiff to obtain access to Wiltrober Hernandez, as the supplier of methamphetamine and cocaine. *Id.* at ¶32. Nocco, Clark, and Starnes, Tellier, Meissner, and McInnes "manufactured evidence that falsely implicated Plaintiff," which included manipulating witnesses to implicate Plaintiff "by means of improper suggestiveness or outright coercion," such as coercing

---

[2] The facts are derived from Plaintiff's Amended Complaint. Doc. 6. A district court must accept the allegations of a complaint as true when ruling on a Rule 12(b)(6) motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

false and incriminating statements from an individual named Eder Alonso Cruz Lopez. *Id.* at ¶¶33–34. Nocco, Clark, Starnes, Tellier, Meissner, and McInnes also: (1) disregarded or destroyed exculpatory evidence; (2) deliberatively and affirmatively failed to investigate or develop information which would have assisted in establishing the guilt of individuals other than Plaintiff; (3) unlawfully suppressed information that would have implicated other individuals; (4) created various sworn police reports that contained materially false evidence; and (5) withheld from Plaintiff, and from prosecutors in some instances, exculpatory and material evidence. *Id.* at ¶¶35–38. Nocco, Clark, Starnes, Tellier, Meissner, McInnes, and McCabe held a press conference, during which they displayed a picture of Plaintiff and indicated that he belonged to a criminal organization. *Id.* at ¶2.

Starnes, Clark, Tellier, Meissner, and McInnes arrested Plaintiff at his home on April 25, 2018. *Id.* at ¶1. The arrest served as retaliation for Plaintiff's exercise of his First Amendment rights when he spoke to Starnes. *Id.* at ¶53. In September of 2018, Plaintiff stood trial for the alleged crimes regarding conspiracy to traffic methamphetamine and conspiracy to traffic cocaine. *Id.* at ¶40. State Attorney Bernie McCabe ("McCabe") "maliciously prosecuted" Plaintiff. *Id.*

Plaintiff now brings five claims in the Amended Complaint: (1) a claim for false arrest under Florida law against "Pasco County Sheriff" and Nocco; (2) a claim under 42 U.S.C. § 1983 for First Amendment retaliation against Starnes, Clark, Meissner, McInnes, and Tellier; (3) a claim for conspiracy to deprive constitutional rights against Nocco, Starnes, and McCabe; (4) a claim for negligent supervision and retention under

Florida law against "Pasco County Sheriff" and Nocco; and (5) a claim for malicious prosecution under Florida law against McCabe. *Id.* at ¶¶41–74.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are also insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.   ANALYSIS

### A. Count I – False Arrest

Turning to Plaintiff's false arrest claim, the Court first notes that Plaintiff brings the claim against "Pasco County Sheriff and Christopher Nocco." Doc. 6 at 9. However, Plaintiff alleges that Nocco *is* the Pasco County Sheriff. *Id.* at ¶9. Plaintiff alleges that "Pasco County Sheriff is a law enforcement agency in the State of Florida,"

4

but does not name the Pasco County Sheriff's Office. *Id.* at ¶8. Plaintiff may have named "Pasco County Sheriff" and Nocco separately in an attempt to bring an official capacity lawsuit against Nocco, as Pasco County Sheriff, and sue Nocco in his individual capacity. Plaintiff fails to offer any explanation or meaningful clarification in his response to the relevant motion to dismiss.

"The main concern of a court in determining whether a plaintiff is suing defendants in their official or individual capacity is to ensure the defendants in question receive sufficient notice with respect to the capacity in which they are being sued." *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1047 (11th Cir. 2008). The Eleventh Circuit has held that, where the capacity in which defendants are sued is unclear, "the course of proceedings typically indicates the nature of the liability sought to be imposed." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). As explained in further detail below, the Court ultimately need not determine whether Plaintiff brings this claim as an official capacity or individual capacity claim because the claim fails.

"A suit against a defendant in his official capacity is, in actuality, a suit against the governmental entity which employs him." *Stephens v. Geoghegan*, 702 So. 2d 517, 527 (Fla. 2d DCA 1997). "A sovereign cannot be sued without its own permission." *Turner v. Homestead Police Dep't*, 828 F. App'x 541, 545 (11th Cir. 2020) (citing *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 471 (Fla. 2005)). "Florida has enacted a limited waiver of its sovereign immunity for tort liability." *Id.* (citing Fla. Stat. § 768.28(1)). Under Florida law:

> No officer, employee, or agent of the state or any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 728.68(9)(a).

The statute also provides:

> The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional agents shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

*Id.*

The Court has interpreted this statutory language as meaning that

> an officer is entitled to immunity in his or her individual capacity for conduct taken within the scope of his or her employment and not done with a "malicious purpose or in a manner exhibiting wanton and willful disregard for human rights, safety, or property," and this type of claim is more properly brought against an officer in his or her official capacity, i.e., against the government entity of which the officer is an employee. On the other hand, if the officer acted with "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard for human rights, safety, or property," the action is barred against the governmental entity and may only be brought against the officer individually.

6

*C.P. by and through Perez v. Collier Cnty.*, 145 F. Supp. 3d 1085, 1094 (M.D. Fla. 2015) (quoting *Anderson v. City of Groveland*, No. 5:15-cv-26-OC-30PRL, 2015 WL 6704516, at *6 (M.D. Fla. Nov. 2, 2015)).

Immunity under section 768.28(9)(a) serves as "both an immunity from liability *and* an immunity from suit, and the benefit of this immunity is effectively lost if the person entitled to assert it is required to go to trial."[3] *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006).

"False arrest is defined as the unlawful restraint of a person against that person's will." *Id.* "To state a claim for false arrest under Florida law, a plaintiff must allege three elements: (1) an unlawful detention and de[p]rivation of liberty against the plaintiff's will; (2) an unreasonable detention which is not warranted by the circumstances and (3) an intentional detention." *Amato v. Cardelle*, 56 F. Supp. 3d 1332, 1334 (S.D. Fla. 2014) (citing *Tracton v. City of Miami Beach*, 616 So. 2d 457 (Fla. 3d DCA 1992)). Under Florida law, probable cause serves as a "complete bar to an action for false arrest," and Florida courts have characterized probable cause as an affirmative defense to a false arrest claim. *Manners v. Cannella*, 891 F.3d 959, 975 (11th Cir. 2018) (internal quotation marks omitted).

---

[3] Additionally, the statute bars a claim against the state or one of its agencies or subdivisions, unless a claimant "presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing . . . ." Fla. Stat. § 728.68(6)(a).

Within Count I, which is labeled as a false arrest claim against "Pasco County Sheriff and Christopher Nocco," Plaintiff alleges that Starnes and Clark, who acted within the course and scope of their duties as law enforcement officers, arrested Plaintiff. Doc. 6 ¶43. Plaintiff alleges that this seizure physically deprived him of his freedom and liberty. *Id.* at ¶44. Further, his restraint and arrest was "unlawful and unreasonable" because "it was not based upon lawfully issued process of the [c]ourt." *Id.* at ¶45. The only other allegation regarding Plaintiff's arrest that is realleged and incorporated into Count I is his allegation that Starnes, Clark, Tellier, Meissner, and McInnes falsely arrested Plaintiff in front of his home. Plaintiff alleges that he has suffered damages as a result of Starnes and Clark's actions, "for which Defendants Pasco County Sheriff and Christopher Nocco" are responsible. *Id.* at ¶46.

First, the Court construes this claim as suing Nocco, as Pasco County Sheriff, in his official capacity, in light of Plaintiff's allegations within Count I that Nocco is responsible for the actions of Starnes and Clark. Because the Court construes the claim against Nocco, as the Pasco County Sheriff, in his official capacity, the basis for any effort to name Nocco in his individual capacity is unclear. As previously stated, the exclusive remedy for injury or damage suffered from an act, event, or omission of an officer of the state or any of its subdivisions or constitutional agents is an action "against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee . . . ." Fla. Stat. § 768.28(9)(a). *See also Mbano v. City of St. Petersburg*, No. 8:14-cv-1923-T-30TBM, 2016 WL 777815, at *3 (M.D. Fla. Feb. 29, 2016) ("Florida

8

law permits a plaintiff to recover against a municipality on a theory of vicarious liability.").

To the extent that Plaintiff seeks to name Nocco individually for some actions taken within the scope of his employment, Plaintiff has not alleged, with the requisite plausibility, any bad faith, malicious purpose, or conduct exhibiting wanton and willful disregard of human rights, safety, or property by Nocco with respect to the false arrest of Plaintiff.[4]

Next, the Court agrees with Nocco that the claim fails because Plaintiff has not pleaded sufficient facts. Plaintiff does not allege that the arrest constituted an unreasonable detention not warranted by the circumstances, nor does Plaintiff allege that the arrest constituted an intentional detention. Plaintiff goes to great lengths to allege that several of the defendants manufactured evidence against him, disregarded or destroyed exculpatory evidence, or took similar actions. The allegations are merely naked assertions or legal conclusions stacked on top of one another. The Amended Complaint must contain sufficient factual matter which, when accepted as true, states a claim that is plausible. Sufficient factual content is absent here. It is unclear which

---

[4] Further, Plaintiff alternatively alleges within Count I, pursuant to Rule 8(d), that Starnes, Clark, Meissner, McInnes, and Tellier "committed the tort of false arrest, but not in bad faith or with malicious purpose, nor in the manner exhibiting willful and wanton disregard of human rights, safety, or property." Doc. 6 ¶48. As Plaintiff alleges that these defendants did not act in bad faith or with malicious purpose, the avenue for pursuing such would be an official capacity lawsuit against the governmental entity. Section 768.28(9)(a), Florida Statutes, clearly provides that the exclusive remedy for injury or damage suffered from an act, event, or omission of an officer of the state or any of its subdivisions or constitutional agents is an action "against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee . . . ." Fla. Stat. § 768.28(9)(a).

officers effected the arrest. No factual allegations regarding the circumstances of the arrest, beyond Plaintiff being arrested at his home, are offered. In his response to Nocco's motion to dismiss, Plaintiff argues that the claim must survive because he pleaded that "Defendants did not have probable cause to arrest him" and the existence of probable cause is a question of fact that cannot be resolved on a motion to dismiss. Doc. 43 at 6. However, the argument fails entirely to address the claim's requisite plausibility or the essential elements of a false arrest claim under Florida law.[5]

Based on the foregoing analysis, Count I is due to be dismissed under Rule 12(b)(6).

## B. Count II – 42 U.S.C. § 1983 First Amendment Violation for Retaliation

In Count II, Plaintiff brings a claim against Starnes, Clark, Meissner, McInnes, and Tellier for First Amendment retaliation under 42 U.S.C. § 1983. Upon review, this claim is due to be dismissed.

42 U.S.C. § 1983 "creates a private right of action to remedy violations of 'rights privileges, or immunities secured by the Constitution and laws' of the United States." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) (quoting *Rehberg v. Paulk*, 556 U.S. 356, 361 (2012)). "The cause of action is available against '[e]very person who acts under color of state law to deprive another of a constitutional right.'" *Id.* (alteration in

---

[5] Plaintiff also argues in passing that he adequately alleges the elements of a false arrest claim "under Florida law *and* under § 1983 in his Amended Complaint." Doc. 43 at 6 (emphasis added). However, Plaintiff expressly labels this claim as a false arrest tort arising under Florida law, and the Court declines to construe the claim as arising under § 1983.

original) (quoting *Rehberg*, 556 U.S. at 361). Indeed, "one cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979).

Clark, Meissner, McInnes, and Tellier argue that, to the extent that Plaintiff seeks to bring an official capacity claim here, he has failed to allege that any policy or custom caused his constitutional rights to be violated. Doc. 16 at 5. "Section 1983 suits against officers in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent,' not against the officer individually." *C.P. by and through Perez*, 145 F. Supp. 3d at 1090 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Thus, official capacity suits against officers "are simply another way of alleging claims against the Sheriff in his official capacity, which in turn is effectively a suit against the governmental entity the sheriff represents." *Id.* (citing *Adcock v. Baca*, 157 F. App'x 118, 119 (11th Cir. 2005); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005)). But, municipalities and other bodies of local government, which are "persons" within the meaning of § 1983, may be sued directly if they are "alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)). "§ 1983 also authorizes suit for constitutional deprivations visited pursuant to a governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* (internal

11

quotation marks omitted). Even if the Court construes this claim as an official capacity claim, the Amended Complaint does not contain a single allegation that Plaintiff's arrest in retaliation for exercising his First Amendment rights was caused through a policy statement, ordinance, regulation, or decision officially adopted or promulgated, nor does it contain a single allegation regarding a governmental custom.

To the extent that Plaintiff seeks to bring this claim against Starnes, Clark, Meissner, McInnes, and Tellier in their individual capacities, these defendants argue that the Court must dismiss this claim because they are entitled to qualified immunity and Plaintiff has not alleged sufficient facts. Docs. 16 at 4, 6–8; 20 at 2–4. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, or (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Indeed, "qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) (internal quotation marks omitted).

Thus, to receive qualified immunity, "an official must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks omitted). "A governmental official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties;

12

and (2) within the scope of his authority." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). "In applying each prong of this test, [courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Mikko*, 857 F.3d at 1144 (original emphasis removed) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). Only the conduct that caused the plaintiff's purported constitutional injury is relevant to this discretionary authority inquiry where the plaintiff alleges that the defendants engaged in a myriad of improper and unlawful conduct. *Id.*

If a defendant makes this showing of discretionary authority, the plaintiff must then establish that qualified immunity is inappropriate by showing that "(1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct." *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

Clark, Tellier, Meissner, and McInnes argue that the allegations within the Amended Complaint show that they acted within their discretionary authority, as all of the allegations pertain to actions taken during the course of investigating drug use and distribution in Pasco County, Florida. Doc. 16 at 4. Starnes briefly claims that he acted within his discretionary authority before proceeding to argue that Plaintiff fails to state a claim because he does not allege the essential elements for a First Amendment retaliation claim. Doc. 20 at 4. Because this First Amendment retaliation claim focuses on the alleged false arrest of Plaintiff, the discretionary authority inquiry centers on that arrest. Although Clark, Tellier, Meissner, and McInnes focus on the arrest in the context of the investigation, this focus is not fatal to their qualified immunity claim since, to the extent these defendants effected the arrest, the arrest fell within their discretionary authority. Indeed, the arrest, if done for a proper purpose, would be within or reasonably related to the outer perimeter of their duties.[6] *See McDowell v. Gonzalez*, 820 F. App'x 989, 991 (11th Cir. 2020) ("A police officer generally acts within the scope of his discretionary authority when making an arrest.").

Accepting his allegations as true, Plaintiff has failed to allege facts indicating that any of the officers violated a statutory or constitutional right. To state a claim for retaliation under the First Amendment, a plaintiff must allege facts demonstrating that

---

[6] Because Plaintiff fails to allege sufficient facts to state a constitutional violation occurred here, the Court need not analyze Starnes' conclusory assertion that he was acting within his discretionary authority. Similarly, even if an argument could successfully be made that these defendants did not sufficiently raise the defense of qualified immunity, the claim still fails as a result of insufficient factual support, as highlighted in the motions to dismiss.

"(1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey*, 843 F.3d at 480. Here, Plaintiff alleges that Starnes, Clark, Meissner, McInnes, and Tellier unlawfully, and without probable cause, arrested him and subjected him to unnecessary force. Doc. 6 ¶53. Next, despite this allegation and bringing the claim against Starnes, Clark, Meissner, McInnes, and Tellier, Plaintiff alleges that these "actions by Defendant Starnes were taken in retaliation for Plaintiff's lawful exercise of his rights under the First Amendment when he spoke to Defendant Starnes and he retaliated by arresting him" *Id.* Plaintiff claims that the conduct of Starnes, Clark, Meissner, McInnes, and Tellier violated Plaintiff's "clearly established right to free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution and for which 42 U.S.C. § 1983 provides a remedy." *Id.* at ¶54.

These allegations fall short. Plaintiff, who seeks compensatory damages, punitive damages, and his costs, expenses, and attorney's fees through his claim, does not allege any facts demonstrating that he engaged in protected speech. Indeed, the Amended Complaint reveals nothing about the content of Plaintiff's speech. Nor is there sufficient factual support for a causal connection existing between the speech and the purported retaliatory actions. Instead, Plaintiff simply concludes that Starnes arrested Plaintiff for Plaintiff's exercise of his rights under the First Amendment when Plaintiff spoke to Starnes. Further undermining Plaintiff's effort to state a statutory or constitutional violation is the recognition that, even when accepting his allegations as

15

true, Plaintiff inconsistently alleges on one hand that Starnes, Clark, Meissner, McInnes, and Tellier unlawfully arrested Plaintiff, while alleging on the other hand that Starnes was the officer who arrested Plaintiff.

In responding to the assertion of qualified immunity raised in the motion to dismiss by Clark, Tellier, Meissner, and McInnes, Plaintiff asserts facts not included in the Amended Complaint, such as his assertion that Count II is "premised on a series of retaliatory actions that include active investigation, invasion of privacy, multiple traffic stops, and ultimately arrest by Defendants" in response to the unwillingness of his brother-in-law, Wiltrober Hernandez, to become a confidential informant. Doc. 43 at 3–4. However, Plaintiff may not amend the Amended Complaint through his response. *Grandrimo v. Parkcrest Harbour Island Condo. Ass'n, Inc.*, No. 8:10-cv-964-T-27MAP, 2011 WL 550579, at *5 (M.D. Fla. Feb. 9, 2011). Plaintiff argues that a genuine issue of material fact exists on the question of whether "Defendants had probable cause to arrest Plaintiff for the crimes alleged" in the Amended Complaint and, therefore, "the fact of Plaintiff's arrest does not eliminate further inquiry into the causation element of his First Amendment retaliation claim to the extent based on the false arrest of his person." Doc. 43 at 4. But, this purported need for "further inquiry" does not adequately respond to the assertion of qualified immunity or the glaring deficiencies with the claim. Similarly, Plaintiff asserts that there is "no doubt that Defendant [Starnes] was acting outside the scope of his discretionary authority when he used a confidential informant to testify about the false assertions regarding the

16

Plaintiff." Doc. 39 at 3. However, this assertion misunderstands the discretionary authority analysis outlined above.

Accordingly, based on the foregoing analysis, Count II is due to be dismissed.

### C. Count III – Conspiracy to Deprive Constitutional Rights

In Count III, Plaintiff brings a claim for "conspiracy to deprive constitutional rights" against Nocco, Starnes, and McCabe. This claim is also due to be dismissed.

Plaintiff alleges that Nocco, Starnes, and McCabe "conspired, directly or indirectly, for the purposes of depriving Plaintiff of Equal Protection of the Law." Doc. 6 ¶56. Plaintiff defends this claim through his responses to the motions to dismiss as one arising under § 1983. Docs. 42 at 4; 43 at 4–6. Upon review, the Court construes this claim as a § 1983 claim for conspiracy to deprive Plaintiff of his right to equal protection of the laws under the Fourteenth Amendment.

Nocco argues that the claim is ripe for dismissal because he is entitled to qualified immunity and Plaintiff fails to provide sufficient factual allegations to state a claim that he engaged in a conspiracy to violate Plaintiff's clearly established constitutional rights. Doc. 16 at 8–10. Further, Starnes argues that he is entitled to qualified immunity and that the Amended Complaint lacks sufficient details and factual allegations to assert a prima facie claim. Doc. 20 at 2, 5–6.

Once again, Plaintiff fails to identify expressly whether he brings this claim in an official capacity or individual capacity. However, Plaintiff alleges within Count III that the "misconduct described in this Count was undertaken pursuant to the policy and procedures of the Pasco County Sheriff's Office in the manner described more

17

Case 8:20-cv-00317-CEH-JSS   Document 45   Filed 02/16/21   Page 18 of 28 PageID 218

fully above." Doc. 6 ¶59. Thus, to the extent that Plaintiff brings this claim against Nocco and Starnes, the Court construes the claim as an official capacity claim. The Court has already outlined the requirements for bringing an official capacity claim under § 1983. Here, despite alleging the misconduct described in Count III was undertaken pursuant to the policies and procedures of the Pasco County Sheriff's Office, Plaintiff does not offer any factual allegations regarding these policies and procedures. To the extent that Plaintiff seeks to rely on his general allegations regarding certain defendants fabricating evidence, manipulating testimony, or other conduct as constituting some type of policy or procedure, those allegations lack sufficient facts.

Even if Plaintiff intends to bring this claim as an individual capacity claim against Nocco and Starnes, the claim fails. Both Nocco and Starnes claim they are entitled to qualified immunity for this claim. Docs. 16 at 8–10; 20 at 2, 5–6. The Court has already set forth the standards governing qualified immunity. Count III focuses on the conspiracy by these defendants to deprive Plaintiff of equal protection of the law through their alleged efforts to "shortcut the process." Doc. 6 ¶32. They took these actions during the course of their investigation in Pasco County, as Nocco highlights in his motion to dismiss. Doc. 16 at 9–10. The investigation, if done for a proper purpose, would be within or reasonably related to the outer perimeter of the duties of Nocco.[7]

---

[7] Once again, given the analysis herein of the deficiencies in this claim, the Court need not analyze Starnes' conclusory assertion that he was acting within his discretionary authority.

And, accepting his allegations as true, Plaintiff has failed to offer sufficient facts indicating any violation of a statutory or constitutional right. "A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). "A plaintiff attempting to state such a claim must allege that the defendants reached an understanding to violate the plaintiff's constitutional rights . . . and that an actionable wrong occurred." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1224 (11th Cir. 2019) (internal quotation marks omitted). "Vague and conclusory allegations suggesting a section 1983 conspiracy are insufficient to withstand a motion to dismiss." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1346 (S.D. Fla. 2012). Here, Plaintiff generally alleges that Nocco, Starnes, and Clark (who is not named in this claim) conspired to "shortcut the process," manufacture evidence, manipulate witnesses unlawfully, and other conduct. The Amended Complaint lacks sufficient factual allegations regarding any understanding reached between the named defendants, or anybody else, to deprive Plaintiff of his constitutional rights. The allegations offered regarding the alleged conduct here are merely naked assertions or legal conclusions.[8] Relatedly, the basis for

---

[8] The Court also notes the intracorporate conspiracy doctrine applies to public entities. *Griber*, 618 F.3d at 1261 (collecting cases). Under the intracorporate conspiracy doctrine, "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc).

Plaintiff's deprivation "of Equal Protection of the Law" is also unclear and lacks sufficient factual support, as alleged.

As for Plaintiff's effort to bring this claim against McCabe, McCabe first argues that he is entitled to immunity to the extent that Plaintiff sues him in an official capacity. Doc. 14 at 2. Indeed, this claim is barred to the extent that Plaintiff sues McCabe in an official capacity. "Absent a waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Indeed, "[t]hree general exceptions are applicable to the Eleventh Amendment's jurisdictional bar: (1) A state's immunity may be abrogated by act of Congress under section 5 of the Fourteenth Amendment; (2) a state may waive its sovereign immunity; or (3) the claim may fall within the confines of *Ex parte Young* [209 U.S. 203 (1908)]." *Camm v. Scott*, 834 F. Supp. 2d 1342, 1347 (M.D. Fla. 2011).

"Congress has not abrogated eleventh amendment immunity in section 1983 cases." *Carr v. City of Florence*, 916 F.2d 1521, 1525 (1990). Under *Ex Parte Young*, a suit alleging a violation of the federal constitution against a state official in an official capacity for injunctive relief does not violate the Eleventh Amendment. *Camm v. Scott*, 834 F. Supp. 2d at 1348. And, Florida's limited waiver of sovereign immunity in § 768.28, Florida Statutes, does not constitute consent to be sued in federal court under § 1983. *See Gamble v. Fla. Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1515 (11th Cir. 1986). Although a State may not be named as a party to the action, the Eleventh Amendment may nonetheless bar the lawsuit. *Zatler v. Wainwright*, 802 F.2d

20

397, 400 (11th Cir. 1986). *See also Paylan v. Bondi*, No. 8:15-cv-1366-T-36AEP, 2017 WL 9398657, at *19 (M.D. Fla. Feb. 28, 2017) (stating that a state attorney is an "arm of the state" for purposes of an Eleventh Amendment analysis), *report and recommendation adopted*, 8:15-cv-1366-T-36AEP, 2017 WL 1149331, at *13 (M.D. Fla. Mar. 28, 2017).

In this § 1983 conspiracy claim against McCabe, Plaintiff seeks compensatory damages, punitive damages, and his costs, expenses, and reasonable attorney's fees. Doc. 6 at 12. The Amended Complaint alleges only that McCabe held a press conference regarding Plaintiff and prosecuted him in 2018. The Eleventh Amendment bars this claim against McCabe to the extent that Plaintiff brings it against McCabe in an official capacity.

McCabe also argues that he is entitled to qualified immunity to the extent that Plaintiff sues him in an individual capacity and that the Amended Complaint lacks sufficient facts to state a claim. Doc. 14 at 2–5. The Court agrees. Under the allegations of the Amended Complaint, McCabe acted within his discretionary authority, as those allegations pertain to his prosecution of Plaintiff. *Id.* at 3. Thus, as alleged, qualified immunity bars this claim against McCabe. Further, even accepting them as true, the allegations regarding McCabe are scant and fall against a backdrop of legal conclusions and naked assertions, as discussed above, that lack the requisite factual content regarding any understanding reached by McCabe and others to deprive Plaintiff of his constitutional rights or the basis for Plaintiff's deprivation of "Equal Protection of the Law." In response, Plaintiff simply asserts that McCabe knew that

21

the evidence against Plaintiff was insufficient and that "his mere presence at the press conference . . . supports the allegation of communication between McCabe and the other Defendants regarding the crimes charged. Doc. 41 at 3, 5. This terse analysis is unpersuasive.

Accordingly, based on the foregoing analysis, Count III is due to be dismissed.

### D. Count IV – Negligent Supervision and Retention

In Count IV, Plaintiff brings a claim for negligent supervision and retention against "Pasco County Sheriff and Defendant Christopher Nocco." Doc. 6 at 13. This claim is also due to be dismissed.

"In Florida, negligent supervision and retention occurs when during the course of employment, the employer becomes aware or should have become aware of the problems with an employee that indicate[] his unfitness and the employer fails to take further action such as investigation, discharge, or reassignment." *Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1298 (M.D. Fla. 2006) (citing *Watson v. The City of Hialeah*, 552 So. 2d 1146, 1148 (Fla. 3d DCA 1989)). "A negligent supervision and retention claim must be based on an injury resulting from a tort which is recognized under common law." *Id.* (internal quotation marks omitted). To state a claim of negligent supervision and retention, a plaintiff must plead facts establishing that a defendant should have foreseen, based on its employee's work history, that they would commit the tort." *See Bello v. Johnson*, 442 F. App'x 477, 480 (11th Cir. 2011) (citing *Dickinson v. Gonzalez*, 839 So. 2d 709, 713–14 (Fla. 3d DCA 2003)). "In essence, a plaintiff must allege that the employer was put on notice of the 'harmful propensities of the

employees.'" *Paul v. Bradshaw*, No. 12-18381-CIV-ROSENBAUM/SELTZER, 2013 WL 12084298, at *13 (S.D. Fla. Aug. 7, 2013) (quoting *Campbell v. Humphries*, 353 F. App'x 334, 336 (11th Cir. 2009)). District courts within the Eleventh Circuit "repeatedly dismiss negligent retention and supervision claims where a plaintiff fails to allege that the employee's tortious conduct was 'outside the scope' of their job duties." *Yule v. Ocean Reef Cmty. Ass'n*, No. 19-10138-CIV-MORENO, 2020 WL 3051505, at *10 (S.D. Fla. June 8, 2020) (collecting cases).

Nocco correctly argues that Plaintiff has not sufficiently pleaded this claim. Doc. 16 at 11. Plaintiff alleges that, during "the Pasco County Sheriff and Christopher Nocco's employment of Defendants Starnes, Clark, Meissner, McInn[e]s, and Tellier, Pasco County Sheriff and Christopher Nocco knew or had reason to know" that Starnes, Clark, Meissner, McInnes, and Tellier "committed violations" of Plaintiff's constitutional rights and had a reasonable opportunity to prevent this harm, but failed to do so. Doc. 6 ¶62. However, a review of the Amended Complaint reveals insufficient factual support for this allegation. The basis for Plaintiff's assertion that "Pasco County Sheriff and Christopher Nocco knew or had reason to know" of these "violations" is entirely unclear. As Nocco aptly highlights in his motion to dismiss, Plaintiff essentially states that "Pasco County Sheriff and Christopher Nocco" knew or should have known that Starnes, Clark, Meissner, McInnes, and Tellier would violate Plaintiff's rights because they did violate his rights.

Further, this claim for negligent supervision and retention cannot rest upon vague "violations" of Plaintiff's rights, but must be based on an injury resulting from

23

a tort. Presumably, Plaintiff intends for the alleged false arrest to serve as this tort, as he alleges that "Pasco County Sheriff and Christopher Nocco have a duty to protect individuals from acts of false arrest by the law enforcement officers they employ." *Id.* at ¶61. The only allegation regarding this false arrest that is realleged and incorporated into Count IV is his allegation that Starnes, Clark, Tellier, Meissner, and McInnes falsely arrested him at his home.[9] As such, insufficient factual support is offered. Plaintiff also has not alleged that the conduct complained of here occurred outside the scope of job duties. Therefore, Plaintiff has failed to state a claim for negligent supervision and retention.

Finally, in bringing this claim, Plaintiff once again names "Pasco County Sheriff" and Nocco as the defendants. The Court has detailed extensively the problems arising from this practice. Nocco argues that, to the extent that Plaintiff names him in this claim in an individual capacity, the claim must be dismissed in accordance with § 728.68(9)(a), Florida Statutes. Doc. 16 at 6. Indeed, notwithstanding the viability of bringing a claim for negligent supervision and retention against Nocco, as Pasco County Sheriff, in his individual capacity, Plaintiff does not allege here that Nocco

---

[9] The Court takes this opportunity to note that Plaintiff realleges and incorporates paragraphs 41 and 42—the first two paragraphs under Count I—within all counts of the Amended Complaint. Doc. 6 ¶¶41, 51, 55, 60, 65. Consequently, portions of Count I are offered in support for all remaining counts. In dismissing Plaintiff's prior complaint as a shotgun pleading, the Court explained that realleging and incorporating all allegations of prior counts into each successive count renders a complaint a shotgun pleading. Doc. 3 at 2. Here, although the Amended Complaint does not reallege and incorporate *all* preceding paragraphs within each count, causing the final count to be a culmination of the Amended Complaint, his incorporation of portions of Count I still raises serious concerns under the Federal Rules of Civil Procedure.

acted in bad faith or with a malicious purpose or otherwise in a manner that exhibited wanton and willful disregard of human rights, safety, or property in accordance with § 728.68(9)(a).

Therefore, based on the foregoing analysis, Count IV is due to be dismissed.

### E. Count V – Malicious Prosecution

Finally, in Count V, Plaintiff brings a claim against McCabe for malicious prosecution, seeking compensatory damages, punitive damages, and Plaintiff's costs, expenses, and attorney's fees. Doc. 6 at 14. The Court will dismiss this claim, with prejudice.

To state a claim for malicious prosecution under Florida law, a plaintiff must allege:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Cohen v. Corwin*, 980 So. 2d 1153, 1155 (Fla. 4th DCA 2008) (quoting *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994)).

"Malice is not only an essential element of malicious prosecution but it is the gist of this cause of action." *Miami-Dade Cnty. v. Asad*, 78 So. 3d 660, 664 (Fla. 3d DCA 2012) (internal quotation marks omitted). Malice is not synonymous with want of

probable cause. *Id.* (citing *White v. Miami Home Milk Producers Ass'n*, 197 So. 125, 126 (Fla. 1940)).

McCabe argues that he is entitled to absolute immunity because, as state attorney, he prosecuted Plaintiff's case. Doc. 14 at 5–6. Although McCabe relies on cases regarding immunity in § 1983 actions, whereas Plaintiff brings this action for malicious prosecution under Florida law, McCabe is nonetheless correct that he is entitled to immunity. "It is well settled that the various officers of the State Attorney's Office are quasi-judicial officers," as established by the Florida Constitution. *Qadri v. Rivera-Mercado*, 303 So. 3d 250, 254 (Fla. 5th DCA 2020). "As quasi-judicial officers, prosecutors enjoy absolute immunity from lawsuits for damages resulting from the performance of their quasi-judicial functions of initiating or maintaining a prosecution." *Id.* (internal quotation marks omitted). "This is true regardless of whether the prosecutor acted maliciously or corruptly." *Id.* When determining whether absolute immunity applies, a court must utilize "a functional approach, examining the nature of the function performed, rather than the motivation of the person performing the function." *Id.* "If the function is intimately associated with the role of the prosecutor in acting as an advocate for the State, absolute immunity attaches." *Id.*

Here, Plaintiff's malicious prosecution claim is premised entirely upon McCabe's prosecution of him in his role as state attorney. Although Plaintiff alleges, without further factual support, that the "proceedings" lacked probable cause and that McCabe conducted such proceedings with malice, these allegations do not change the

recognition that Plaintiff grounds this claim on McCabe's performance of his quasi-judicial function of initiating and maintaining a prosecution. Indeed, Plaintiff emphasizes that McCabe acted within the scope of his employment as a state attorney and, as such, "the State Attorney's Office is responsible for his actions." Doc. 6 ¶71. Simply put, the allegations pertain to McCabe's prosecution of Plaintiff. Therefore, because McCabe is entitled to immunity for this claim, as alleged, the Court will dismiss the claim.

## IV.   CONCLUSION

The claims within the Amended Complaint contain *significant* deficiencies. Because the underlying facts or circumstances relied upon by Plaintiff *may* be a proper subject of relief, the Court will grant Plaintiff one further opportunity to amend the Amended Complaint.[10] *Dysart v. BankTrust*, 516 F. App'x 861, 865 (11th Cir. 2013). As such, Counts I through IV are dismissed, without prejudice, to Plaintiff's right to file an amended pleading. Count V is dismissed with prejudice, as McCabe is entitled to immunity for this claim.[11] Any amended pleading must correct the deficiencies identified herein.

Accordingly, it is **ORDERED**:

---

[10] Because the Court dismisses the claims, it need not address the argument raised by Nocco, Clark, Tellier, Meissner, and McInnes regarding improper attorney's fees and punitive damages, except to say that the arguments are well-taken. Doc. 16 at 13.

[11] Likewise, to the extent Plaintiff attempts to assert an official capacity claim against McCabe in Count III, it is dismissed with prejudice, due to Eleventh Amendment immunity.

1. Defendant Bernie McCabe's Motion to Dismiss Plaintiff's Amended Complaint, Doc. 14, is **GRANTED**.

2. The Motion to Dismiss Amended Complaint by Defendants Sheriff, Nocco, Clark, Tellier, Meissner, and McInnes, Doc. 16, is **GRANTED**.

3. The Motion to Dismiss the Amended Complaint of Christopher Starnes, Doc. 20, is **GRANTED**.

4. Plaintiff's Amended Complaint, Doc. 6, is **DISMISSED without prejudice,** as to Counts I through IV.  The Amended Complaint is **DISMISSED with prejudice**, as to Count V.

5. Plaintiff is granted leave to file a second amended complaint within **FOURTEEN (14) DAYS** of the date of this order, which must correct the deficiencies identified herein. **Failure to file a second amended complaint within the time provided will result in the Court closing this case without further notice**.

**DONE AND ORDERED** in Tampa, Florida on February 16, 2021.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any