UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS MARTINEZ VERDE,

    Plaintiff,

v.                                                Case No: 8:20-cv-317-CEH-JSS

PASCO COUNTY SHERIFF'S
OFFICE, CHRISTOPHER NOCCO,
BRAD CLARK, CHRISTOPHER
STARNES, ADAM TELLIER,
RUSSELL MEISSNER and STEPHEN
MCINNES,

    Defendants.

## ORDER

This cause comes before the Court upon the Motion for Summary Judgment filed by Defendants Sheriff Christopher Nocco, Brad Clark, Russell Meissner, Steve McInnis, and Adam Tellier (Doc. 72), the Motion for Summary Judgment filed by Defendant Christopher Starnes (Doc. 75), the corresponding responses (Docs. 79, 80), and the replies (Docs. 83, 84). The parties have also filed a stipulation of agreed material facts (Doc. 89) and supporting evidence (Docs. 73, 74, 76).

Having reviewed the evidence presented and considered the arguments of counsel in their submissions and at oral argument, the Court will grant Defendants' Motions for Summary Judgment as to Count II, in which Plaintiff alleges that the Defendants violated his First Amendment right to free speech and seeks damages

pursuant to 42 U.S.C. § 1983. The Court declines to exercise its supplemental jurisdiction over the remaining state-law claims.

I. FACTUAL BACKGROUND[1]

A. Underlying Investigation

In December 2015, the Pasco County Sheriff's Office was working on a narcotics-related investigation in Dade City, Florida.[2] Doc. 89 ¶ 1. A month later, based on information provided by a confidential informant ("CI"), Homero Camacho became the main subject of the investigation. *Id.* ¶ 2. In August of 2016, another CI provided information that Eder Alonso Cruz Lopez ("Cruz") was involved in methamphetamine trafficking with Camacho. *Id.* ¶ 4. Defendant Clark subsequently confirmed through inmate call records from the Pasco County Jail that Cruz was in contact with Camacho. *Id.* ¶ 5. Deputies conducted surveillance of 7166 Glory Road in Zephyrhills, Florida, where they believed that Camacho lived. *Id.* ¶ 6; Doc. 75-1 at 27–28; Doc. 72-2 at 11–14. They believed that Wiltrober Hernandez also resided there based on intelligence gathered from CIs and surveillance. Doc. 89 ¶ 3; Doc. 75-1 at 27–28. Separately, a CI described the location where Cruz was obtaining his narcotics

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the statement of agreed material facts (Doc. 89) and the depositions, affidavits, and other supporting evidence filed by the parties (Docs. 72, 73, 74, 75, 76, 79, 80). For purposes of summary judgment, the Court considers the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

[2] At all times relevant to the investigation and ultimate arrest of Plaintiff in this case, Defendant Nocco was the Sheriff of Pasco County, Florida, and Defendants Clark, Starnes, Tellier, Meissner, and McInnis were Pasco County Sheriff's Office deputies. Doc. 89 ¶ 10.

supply, and his description closely matched the property at 7166 Glory Road. Doc. 72-1 at 14; Doc. 73-1 at 49.

Investigators placed a GPS tracker on Cruz's car and a pen register on his cellphone. Doc. 89 ¶ 9. They learned he visited 38244 Ruth Avenue in Zephyrhills, which was the address of Plaintiff Luis David Martinez Verde ("Plaintiff").[3] *Id.* ¶¶ 11–12; Doc. 72-1 at 29–32. Deputies observed Cruz traveling to the area of the Ruth Avenue address after a controlled drug buy from Defendant Meissner, and GPS tracking of his vehicle showed that he would often go to the address before and after conducting drug transactions. Doc. 89 ¶¶ 13–14. As a result, they believed he was obtaining drugs there. *Id.* ¶ 16. They also observed that Cruz often called or received a call from his source of supply around the time he arrived at Plaintiff's residence. Doc. 73-1 at 67, 84–85.

### B. Cruz's Arrest and Proffer

Through investigation, the Defendants also learned that Cruz was involved in illegal drug activity with Alfred Grabowski ("Grabowski"). Doc. 89 ¶ 15. In early January 2017, Pasco deputies conducting surveillance saw Cruz enter the property at 7166 Glory Road and then appear with a black package before driving to Grabowski's house. *Id.* ¶ 18. They then witnessed a male exit Cruz's vehicle with a multicolored bag. *Id.*

---

[3] It is undisputed that Plaintiff went by the name David. Doc. 72-1 at 77–78; Doc. 76 at 82; Doc. 74 at 37. He is referred to as David in numerous depositions, police reports, and Cruz's proffer testimony.

On March 2, 2017, Grabowski's residence was searched pursuant to a warrant, and trafficking amounts of illegal narcotics, firearms, and currency were found. *Id.* ¶ 19. Several weeks later, Cruz was arrested and charged with multiple counts of trafficking in methamphetamine and cocaine, and illegal use of a two-way communication device. *Id.* ¶ 20; Doc. 72-1 at 75–76. He named Plaintiff and Hernandez as his drug suppliers immediately after his arrest. Doc. 72-1 at 77–79. Cruz stated during a sworn proffer with the State Attorney's Office (and reiterated later in a deposition pursuant to this lawsuit) that he had been obtaining drugs from Plaintiff and Hernandez at the Glory Road and Ruth Avenue addresses and had dropped off drug money at these same addresses. Doc. 72-5 at 13–14, 18–20, 22–24, 26–29; Doc. 72-6 at 7–10, 25–26, 28, 32, 34–36. Cruz also confirmed that Plaintiff and Hernandez were the only drug suppliers that he would have called on his cellphone. Doc. 72-5 at 22.

### C. Plaintiff is Arrested Pursuant to a Warrant

After Cruz's arrest and proffer session, a warrant was issued for Plaintiff's arrest, based on the affidavit of Defendant Clark, on allegations of knowingly conspiring, combining, or confederating to knowingly sell, deliver, and/or purchase cocaine and methamphetamine. Doc. 89 ¶ 24. Plaintiff was arrested on April 25, 2017. *Id* ¶ 25. Plaintiff states that, upon arrest, he was asked about drugs and answered that he did not know anything. Doc. 74 at 51. Plaintiff was not injured during his arrest. *Id.* at 50. Hernandez was also taken into custody on similar charges. Doc. 89 ¶¶ 22–23. At trial, Plaintiff was ultimately acquitted of all charges. Doc. 47 ¶ 38; Doc. 87 ¶ 38.

**Procedural History**

Plaintiff filed suit against Pasco County Sheriff Christopher Nocco and several Pasco County law enforcement officers. Doc. 47. In Count I, Plaintiff sues Sheriff Nocco or, in the alternative, the Defendant deputies, for false arrest under Florida law. *Id.* at ¶¶ 39–60. In Count II, he sues Defendants Starnes, Clark, Meissner, McInnes, and Tellier under 42 U.S.C. § 1983 for First Amendment retaliation. *Id.* at ¶¶ 61–66. In Count III, Plaintiff sues Sheriff Nocco for negligent supervision and retention under Florida law. *Id.* at ¶¶ 67–73. Defendants now move for summary judgment as to all counts. Docs. 72, 75. The Undersigned held a hearing on both motions on September 13, 2022 (Doc. 108).[4]

## II.  LEGAL STANDARD

Summary judgment is appropriate only when the court is satisfied that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law after reviewing the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any[.]" Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[4] On the same day, the Court heard argument on pending summary judgment motions in a related case involving Hernandez's suit against the Pasco County Sheriff's Office.

242, 249 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248.

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323–24; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden is discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "Only when that burden has been met does the burden shift to the non-moving party." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "[I]n order to survive summary judgment, the nonmoving party must set forth specific facts showing there is a genuine issue for trial." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 826 F. App'x 766, 770 (11th Cir. 2020) (citing *Anderson*, 477 U.S. at 249–50). "[U]nsupported conclusory allegations do not suffice." *Middlebrooks v. Sacor Fin., Inc.*, 775 F. App'x 594, 596 (11th Cir. 2019). Likewise, "[a] 'mere existence of a scintilla of evidence' cannot suffice to create a genuine issue of material fact." *Johnson*, 826 F. App'x at 770 (quoting *Anderson*, 477 U.S. at 252).

### III.  DISCUSSION

The Court begins its analysis with Count II, the federal claim that gives this Court subject-matter jurisdiction over this matter.

In Count II, Plaintiff alleges that Defendants Starnes, Clark, Meissner, McInnis, and Tellier were acting under color of law for the Pasco County Sheriff's Office when

they retaliated against him for exercising his First Amendment rights. Doc. 47 ¶ 62. Plaintiff claims that Defendants targeted him in their investigation because of his "possible association with Wiltrober Hernandez." *Id.* ¶ 64. He also asserts that the Defendants "unlawfully and without probable cause arrested [him] and subjected him to unnecessary force." *Id.* ¶ 65. He adds that "such actions by Defendant Starnes were taken in retaliation for Plaintiff's lawful exercise of his rights under the First Amendment when he spoke to Defendant Starnes and he retaliated by arresting him." *Id.* Plaintiff asserts that the Defendants' conduct violated his right to free speech as guaranteed by the First and Fourteenth Amendments. *Id.* ¶¶ 65–66.[5]

In their motions, Defendants contend that summary judgment is warranted in their favor for Count II on qualified immunity grounds. First, they highlight that Plaintiff admits to never having spoken with Starnes and not even knowing who he is. Doc. 72 at 20–24; Doc. 75 at 10–12. They also argue that any claim of unnecessary force against Starnes or the remaining defendants must fail because Plaintiff testified that he doesn't know which deputies were present at his arrest, and that he was not physically injured during his arrest. Doc. 72 at 23. Even if Plaintiff could show that he had spoken to one of the Defendants, they assert that they would still be entitled to qualified immunity because both probable cause and arguable probable cause existed when the affidavit for the arrest warrant was submitted. Doc. 72 at 23; Doc. 75 at 17.

---

[5] The Complaint does not state whether these claims are brought against the deputies in their individual or official capacities. Doc. 47. However, at oral argument, Plaintiff's counsel stated that the claims are brought against Defendants in their individual capacities only.

7

Assuming probable cause and arguable probable cause were lacking for Plaintiff's arrest, they claim that qualified immunity still applies because there was no violation of clearly established law to make out a First Amendment Retaliation claim. Doc. 75 at 12.

Plaintiff's Responses argue that Defendants were not acting within the scope of their discretionary function when the alleged retaliatory acts occurred, and that there was no arguable probable cause for his arrest. Doc. 79 at 12–21; Doc. 80 at 17–18. He also claims that Defendants constructed allegations of criminal activity against Hernandez and Plaintiff based on the number of vehicles registered to Hernandez and alleged statements made by Cruz.⁶ Doc. 79 at 16–17; Doc. 80 at 17–18.

Starnes' reply argues that Plaintiff has failed to raise a genuine issue of material fact as to his claims and that he has failed to provide evidence of First Amendment retaliation. Doc. 84 at 3–7. The remaining Defendants similarly argue that Plaintiff has failed to refute their showing that the warrant and arrest were supported by a reasonable investigation and probable cause, and that Plaintiff has failed to prove sufficient involvement on their part to show that they are not entitled to summary

---

⁶ Although Defendants argue that both motions should be treated as unopposed due to Plaintiff's untimely responses, the Court will consider Plaintiff's responses in its analysis. "[F]ederal courts have a strong preference for deciding cases on the merits rather than procedural technicalities." *Green v. Premier Telecomm. Servs., LLC*, No. 1:16-CV-0332-LMM, 2017 WL 4863239, at *9 (N.D. Ga. Aug. 15, 2017), *on reconsideration in part*, 2017 WL 6994888 (N.D. Ga. Nov. 9, 2017).

judgment. Doc. 83 at 6–10. Tellier and McInnis also indicate that Plaintiff makes no factual allegations against them whatsoever. *Id.* at 10.

### A. Qualified Immunity

Before analyzing the merits of Plaintiff's retaliatory arrest claim, the Court must first determine whether Defendants are entitled to qualified immunity, as they argue. *Vassilev v. City of Johns Creek*, No. 1:14-CV-0312-LMM, 2015 WL 12591737, at *8 (N.D. Ga. Sept. 29, 2015). Qualified immunity shields federal and state officials from money damages unless the plaintiff can establish that (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). During a qualified immunity analysis at the summary judgment stage, the Court "must take the facts in the light most favorable to the party asserting the injury." *Robison v. Arugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

As detailed below, the Court finds that summary judgment is appropriate on Count II because there is no genuine dispute as to whether Defendants are all entitled to qualified immunity. Defendants have successfully discharged their burden at each step of the qualified immunity analysis. First, there is no genuine dispute as to whether Defendants acted within their discretionary authority at all times relevant to Plaintiff's allegations. The burden then shifts to Plaintiff to show that qualified immunity is inappropriate. He fails to make the requisite showing at this stage for a retaliatory arrest claim—which is that a reasonable jury could find that he engaged in protected

speech that was the but-for cause of his arrest. Plaintiff's claim fails on the requirement of causation because he does not set forth specific facts showing a lack of arguable probable cause for his arrest.

1. *Discretionary Authority*

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)). Discretionary authority includes all actions of a government official that (1) "were undertaken pursuant to the performance of his duties" and (2) were "within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). The Eleventh Circuit has held that "[a] police officer generally acts within the scope of his discretionary authority when making an arrest." *McDowell v. Gonzalez,* 820 F. App'x 989, 991 (11th Cir. 2020).

In his response, Plaintiff disputes that Defendant Starnes acted within the scope of his discretionary authority when the alleged retaliatory acts occurred. Doc. 79 at 15–16. He alleges Starnes "initiated a narrative that Wiltrober Hernandez was a known drug trafficker" to "gain recognition," and that Clark and Starnes admit they did not have any information or evidence of Plaintiff being engaged in criminal activity. *Id.* at 15. Plaintiff similarly argues that the other Defendants were acting outside the scope of their discretionary function. Doc. 80 at 17–18. He asserts that Clark and Starnes knew that Hernandez was an active confidential informant for the DEA, and that he was the "main focus" of the investigation "based solely on vehicles

10

registered to him and his prior criminal history." *Id.* Plaintiff also claims that at no time during the investigation did any of the detectives know who he was or "assert any knowledge" of his involvement in criminal activity. *Id.* However, these claims are irrelevant to the issue of whether the Defendants were acting pursuant to the performance of their duties and scope of their authority. As investigations and arrests are generally within the scope of an officer's discretionary authority, and Plaintiff has not provided evidence to suggest otherwise in this case, the Court finds that Defendants were acting pursuant to the performance of their duties and within the scope of their authority during the investigation and arrest of Plaintiff. *McDowell,* 820 F. App'x at 991. Thus, they were acting within their discretionary authority.

2. *Protected Speech*

"Once the defendants have established that they were acting within their discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate." *Gonzalez,* 325 F.3d at 1234. Here, Plaintiff must show both that his speech was protected and that he was arrested because of it. *Hartman v. Moore*, 547 U.S. 250, 261 (2006).

As to the first requirement, Plaintiff fails to clearly specify the protected speech that he alleges led to his arrest. Examples of constitutionally protected speech include the right to petition the government for redress, the right of access to the courts, and the right to speak freely without retaliation from the government. *See DeMartini v. Town of Gulf Stream,* 942 F.3d 1277, 1288 (11th Cir. 2019). Plaintiff claims that he "spoke to Defendant Starnes and [Starnes] retaliated by arresting him." Doc. 47 ¶ 65. Thus, he

11

seems to suggest that he was arrested based on something he said to Starnes during the arrest. However, from the Complaint and Plaintiff's Responses, it is not clear whether he contends that he was arrested in retaliation for speaking to Starnes, or for his association with Hernandez. Moreover, Plaintiff testified that he had no conversation with Starnes and doesn't know who he is. Doc. 74 at 32. Further, Plaintiff doesn't know which deputies were present at his arrest.[7] Thus, Plaintiff fails to raise a genuine dispute of material fact as to whether his speech was protected, because he does not specify which act or acts of speech allegedly led to his arrest.[8]

3. *Retaliatory Arrest and Arguable Probable Cause*

Even assuming Plaintiff demonstrated that his speech was protected, to defeat qualified immunity, he must also show that the protected speech was the "but-for" cause of the arrest. *Hartman*, 547 U.S. at 261. This means Plaintiff must prove that the arresting officer would not have made the arrest if Plaintiff had not engaged in his protected speech. *Id.* In short, the dispositive question becomes whether the officer had

---

[7] Plaintiff also testified that he was not physically injured during his arrest, i.e., no bruises, no cuts, no broken bones, nothing of a physical nature. Doc. 74 at 50.

[8] At oral argument, Plaintiff's counsel stated that his First Amendment retaliation claim was based on the right to freedom of association, rather than freedom of speech. This alternative claim is not detailed in the operative Complaint or Plaintiff's Responses to the motions for summary judgment. The Eleventh Circuit directs that parties are "not allowed to raise at oral argument [] new issue[s] for review." *McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1263 (11th Cir. 2004); *see also Crouch v. Teledyne Continental Motors, Inc.,* 511 F. App'x 822, 824 n.1 (11th Cir. 2013) (declining to address an issue raised for the first time during oral argument). Likewise, this Court has stated that issues raised during oral argument are not properly before the Court. *Starbuck v. R.J. Reynolds Tobacco Co.,* 349 F. Supp. 3d 1223, 1229 (M.D. Fla. 2018). Accordingly, the Court will not consider this alternative theory of the claim. Regardless, as discussed *infra*, there was arguable probable cause for Plaintiff's arrest, and Defendants would be granted summary judgment on a freedom of association claim as well.

arguable probable cause to arrest the plaintiff. *Carter v. Gore,* 557 F. App'x 904, 908 (11th Cir. 2014). Thus, a defendant accused of First Amendment retaliatory arrest can defeat a claim at summary judgment, based on lack of causation, if he can show there is no genuine dispute that there was arguable probable cause to arrest. *Phillips v. Irvin*, 222 F. App'x 928, 929 (11th Cir. 2007) (holding that to defeat a claim at summary judgment, the defendant "only needed to establish *arguable* probable cause, which [he] did"); *Lawson v. City of Miami Beach*, 908 F. Supp. 2d 1285, 1289 (S.D. Fla. 2012). And in order to strip officers of their qualified immunity and bring a First Amendment retaliatory arrest claim, the plaintiff must affirmatively show an absence of arguable probable cause. *Johnson v. Dekalb County, Georgia*, 391 F.Supp.3d 1224, 1247 (N.D. Ga. 2019) (citing *Redd v. City of Enterprise,* 140 F.3d 1378, 1384 (11th Cir. 1998) ("[W]hen an officer has *arguable* probable cause to believe that a person is committing a particular public offense, he is entitled to qualified immunity from suit, even if the offender may be speaking at the time he is arrested.")).

Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant [] could have believed that probable cause existed to arrest." *Poulakis v. Rogers,* 341 Fed. Appx. 523, 527 (11th Cir. 2009). In turn, probable cause to arrest for the commission of a crime is present when "law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992). In considering whether probable cause to make an arrest exists, the Eleventh Circuit

instructs that an arrest "must be objectively reasonable based on the totality of the circumstances." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense. *Id.* The relevant offense-specific inquiry here is whether arguable probable cause existed to believe Plaintiff was knowingly conspiring, combining, or confederating to knowingly sell, deliver, and/or purchase cocaine in violation of Chapters 893.135(1)(b)1.c., and 893.135(5), Florida Statutes, and methamphetamine in violation of Chapters 893.135(1)(f)1.c. and 893.135(5), Florida Statutes. *See* Doc. 73-3.

Plaintiff does not offer much in the way of an argument that there was no arguable probable cause to arrest him. In his Response, he simply states that Defendants did not have probable or arguable probable cause to submit the warrant affidavit. Doc. 79 at 13; Doc. 80 at 13–14. In support of this claim, he argues that none of the detectives had ever heard of Plaintiff prior to his arrest, and that they "manipulated the investigation so as to have scripted probable cause" to arrest Plaintiff and Hernandez. Doc. 79 at 13. He also argues that there are unspecified "clearly false statements" in the warrant affidavit. *Id.* at 19. Finally, Plaintiff claims that Defendants constructed allegations of criminal activity by him and Hernandez because of Hernandez's refusal to become a CI. Doc. 80 at 19. Plaintiff's claims about Defendants manipulating the investigation are unsupported and unclear, and he fails to point out

14

which specific statements in the warrant affidavit are allegedly false. His bare claim that Defendants constructed allegations of his criminal activity is controverted by the warrant affidavit, as well as the records of the investigation and the numerous depositions taken for this case.

To the contrary, based on the evidentiary record, no reasonable jury could find that Defendants lacked arguable probable cause to arrest Plaintiff. Plaintiff was arrested on the basis of a valid warrant backed by a lengthy investigation and probable cause, not because of any protected speech or his refusal to speak. A finding of arguable probable cause to arrest Plaintiff is supported by numerous undisputed facts in the record. First, a judge agreed that sufficient probable cause existed to issue a warrant for Plaintiff's arrest. Doc. 73-3. Next, surveillance showed Cruz, a known drug trafficker, frequently traveling to Plaintiff's residence, including immediately before and after undercover drug buys. Doc. 72-1 at 30–45; Doc. 73-1 at 51, 55. Surveillance also showed that Cruz would frequently travel to Plaintiff's residence before or after communicating with Grabowski, another known drug trafficker, which caused deputies to believe that Cruz was obtaining drug supply there, and then returning to deliver the money from the drug transactions. Doc. 73-1 at 61, 75, 80, 84, 93, 97. Finally, Cruz's post-arrest and proffer statements corroborated the investigation conducted by the Pasco County Sheriff's Office in that he admitted to purchasing drugs from Plaintiff and Hernandez at the addresses deputies had been observing. Doc. 72-5 at 18–20, 22–24, 26–29. In summary, Plaintiff has not raised a genuine issue of

material fact as to whether arguable probable cause to arrest him existed here, and Defendants are thus entitled to qualified immunity.

4. *The Defendants' Involvement in Plaintiff's Arrest*

Defendants Starnes, Clark, Meissner, Tellier, and McInnis argue that Plaintiff's retaliatory arrest claim against them must also fail for a second reason—which is that he makes only conclusory allegations and fails to raise a genuine issue of fact as to whether they had any involvement in his arrest. Doc. 72 at 22–23; Doc. 75 at 13–14. The Court agrees.

The Parties stipulated to the fact that Plaintiff was not arrested by Starnes. Doc. 89 ¶ 26. Plaintiff also stated that he has never had a conversation with Starnes and "[doesn't] know who he is." Doc. 74 at 32. And Plaintiff testified at a deposition that he did not speak to any other officer prior to his arrest. *Id*. Accordingly, Plaintiff's First Amendment retaliation claims would fail, even if he could show that there was no arguable probable cause, because he has failed to raise a genuine issue of material fact as to whether any individual Defendant was even involved in his arrest and himself admits that he did not have any conversations with officers prior to being arrested.

## IV. CONCLUSION

For the reasons stated above, Defendants Starnes, Clark, Tellier, Meissner, and McInnis are entitled to summary judgment on Count II.

Plaintiff's remaining claims in Count I (False Arrest) and Count III (Negligent Supervision and Retention) arise under Florida law. Doc. 44 at 9, 15. The resolution of those claims will require analysis of Florida Law. "[I]n the usual case in which all

16

federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Therefore, the Court will decline to exercise its supplemental jurisdiction over these remaining claims.[9] *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").

Accordingly, it is hereby **ORDERED:**

1. Defendants Brad Clark, Russell Meissner, Steve McInnis, and Adam Tellier's Motion for Summary Judgment (Doc. 72) is **GRANTED** as to Count II.

2. Defendant Christopher Starnes' Motion for Summary Judgment (Doc. 75) is **GRANTED** as to Count II.

---

[9] The period of limitations for any claim asserted under subsection (a) [establishing supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Section 1367(d) "protects plaintiffs who choose to assert supplemental state-law claims in a federal action. If the court declines to exercise supplemental jurisdiction over those claims, the plaintiff may assert them in a new action in state court without fear of being barred by the statute of limitations. This obviously protects plaintiff when state law might not have provided for tolling during the pendency of the federal-court case." 13D Charles Alan Wright et al., *Federal Practice & Procedure* § 3567.4, 458–59 (3d ed. 2008).

3. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims in Counts I and III. Counts I and III are **DISMISSED WITHOUT PREJUDICE.**

4. The Clerk is directed to enter Judgment in favor of Defendant Starnes and Defendants Clark, Meissner, McInnis and Tellier, and against Plaintiff, Luis Martinez Verde, as to the federal claim in Count II.

5. The Clerk is further directed to terminate any pending motions and deadlines and close this case.

**DONE** and **ORDERED** in Tampa, Florida on March 8, 2023.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties